UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

|  |  |  |
|---|---|---|
| GARY G. CAMPBELL, | ) | |
| | ) | |
| Plaintiff, | ) | 3:13-cv-0627-LRH-WGC |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| HEATHER GARCIA, as personal | ) | |
| representative of THE ESTATE OF LARRY | ) | |
| WAYNE KILBURN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before the court are defendant Heather Garcia's ("Garcia"), as personal representative of the Estate of Larry Wayne Kilburn ("the Estate"), motion in limine no. 1 (ECF No. 88) and motions in limine nos. 2-8 (ECF No. 89).

Also before the court are plaintiff Gary G. Campbell's ("Campbell") motion in limine to exclude references to an intervening event (ECF No. 90), motion in limine to exclude surveillance report (ECF No. 91), motion in limine to exclude past medical bills (ECF No. 92), motion in limine to limit testimony (ECF No. 93), motion in limine to allow reference to community conscience (ECF No. 94), motion in limine regarding the filings of motions in limine (ECF No. 95), motion in limine regarding hypothetical questions (ECF No. 96), motion in limine to exclude prior accidents (ECF No. 97), and motion in limine to permit reference to insurance (ECF No. 98).

///

**I.      Facts and Procedural Background**

On the morning of September 11, 2011, Larry Wayne Kilburn ("Kilburn") was driving southbound on US Route 95 in Mineral County, Nevada when he veered into the oncoming traffic lane and struck Campbell's vehicle. As a result of the accident, Campbell sustained injuries and Kilburn was killed.

On August 26, 2013, Campbell filed a complaint against the Estate. ECF No. 1, Exhibit 2, at 12-17. Campbell then filed a first amended complaint for negligence and negligence per se. ECF No. 7. In his complaint, Campbell seeks damages for pain and suffering stemming from the accident, including emotional damages related to alleged Post Traumatic Stress Disorder ("PTSD"). *Id*.

On March 18, 2015, Campbell filed a motion for partial summary judgment on the issue of liability (ECF No. 59), which the court granted (ECF No. 74). Subsequently, on May 4, 2015, defendant Garcia filed a motion for partial summary judgment on the issue of emotional damages (ECF No. 69), which the court denied (ECF No. 79). Thereafter, the parties filed the present motions in limine. ECF Nos. 88-98. Trial in this action is currently scheduled for Tuesday, November 1, 2016.

**II.     Legal Standard**

A motion in limine is used to preclude prejudicial or objectionable evidence before it is presented to the jury. Stephanie Hoit Lee & David N. Finley, *Federal Motions in Limine* § 1:1 (2012). The decision on a motion in limine is consigned to the district court's discretion—including the decision of whether to rule on the motion prior to trial. *See Hawthorne Partners v. AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) (noting that a court may wait to resolve the evidentiary issues at trial, where the evidence can be viewed in its "proper context"). Motions in limine should not be used to resolve factual disputes or to weigh evidence, and evidence should not be excluded prior to trial unless "the evidence [is] inadmissible on all potential grounds." *See, e.g., Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). Even then, rulings on

1  pretrial motions in limine are not binding on the court, and the court may amend, renew, or

2  reconsider such rulings in response to developments at trial. *See Luce v. United States*, 469 U.S. 38,

3  41 (1984).

4        Generally, all relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if it

5  has "any tendency to make the existence of any fact that is of consequence to the determination of

6  the action more probable or less probable than it would be without the evidence." Fed. R. Evid.

7  401. Further, the determination of whether evidence is relevant to an action or issue is expansive

8  and inclusive. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384-87 (2008). However,

9  the court may exclude otherwise relevant evidence "if its probative value is substantially

10  outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. In such a case, relevant evidence

11  may be excluded when there is a significant danger that the jury might base its decision on emotion

12  or when non-party events would distract reasonable jurors from the real issues in a case. *See*

13  *Tennison v. Circus Circus Enters., Inc.*, 244 F.3d 684, 690 (9th Cir. 2001); *United States v. Layton*,

14  767 F.2d 549, 556 (9th Cir. 1985).

15  **III.**    **Discussion**

16      **A.  Defendant Garcia's Motion in Limine No. 1 (ECF No. 88)**

17        In her first motion in limine, Garcia seeks to (1) preclude Dr. David Antonuccio

18  ("Dr. Antonuccio") from testifying about the reasonableness of Campbell's medical bills because

19  no such opinion is included within his written report,[1] and (2) preclude Dr. Michael Song ("Dr.

20  Song") from testifying about the reasonableness of Campbell's psychological treatment and/or the

21  reasonableness of any bills incurred for that psychological treatment because it is outside the scope

22  ///

23  ///

24

25      [1] A copy of Dr. Antonuccio's written report is attached as Exhibit A to the motion in limine. *See* ECF No. 88, Exhibit A, at 14-18.

26

1    of his particular expertise and because no such opinion is included in his expert report.[2] *See* ECF

2    No. 88. In response, Campbell filed a non-opposition to Garcia's motion stating that he did not

3    intend to elicit testimony from either Dr. Antonuccio or Dr. Song concerning the reasonableness of

4    his prior medical bills. *See* ECF No. 110. Therefore, the court shall grant Garcia's motion in limine

5    no. 1.

6        **B.  Defendant Garcia's Motion in Limine No. 2-8 (ECF No. 89)**

7        In her second motion in limine, Garcia seeks to exclude seven additional categories of

8    evidence or argument. The court shall address each evidentiary challenge below.

9        **1.  Reference to Insurance**

10       Garcia seeks an order prohibiting Campbell from offering any evidence or making any

11   direct or indirect reference to the fact that Kilburn had automotive liability insurance at the time of

12   the accident. The court agrees.

13       Evidence that a person was or was not insured against liability is generally not admissible.

14   *See* Nev. Rev. Stat. § 48.135(1) ("Evidence that a person was or was not insured against liability is

15   not admissible upon the issue of whether he acted negligently or otherwise wrongfully."); Fed. R.

16   Evid. 411 ("Evidence that a person was or was not insured against liability is not admissible to

17   prove whether the person acted negligently or otherwise wrongfully. But the court may admit this

18   evidence for another purpose, such as proving a witness's bias or prejudice or proving agency,

19   ownership, or control."). Campbell's sole basis to admit evidence of Kilburn's insurance is to

20   prevent an alleged bias he believes the jury will have toward him for suing Kilburn's Estate.

21   However, there is no inherent jury bias in a suit against a decedent's estate. Nor will the admittance

22   of evidence that Kilburn was insured at the time of the accident cure any perceived bias for suing

23   the Estate. Thus, Campbell has not shown that there is a legitimate reason to admit evidence that

24

25       [2] A copy of Dr. Song's written report is attached as Exhibit B to the motion in limine. *See* ECF No. 88,
     Exhibit B, at 28.

26

4

1    Kilburn was insured at the time of the accident. Therefore, the court shall grant Garcia's motion as

2    to this issue.

### 2.   Reference to Settlement Negotiations

4        Garcia similarly seeks an order prohibiting Campbell from offering any evidence or making

5    any direct or indirect reference to any settlement negotiations or settlement offers, including offers

6    of judgment made prior to trial. Campbell does not oppose this motion in limine. *See* ECF No. 111

7    at 4. Therefore, the court shall grant Garcia's motion as to this issue.

### 3.   Reference to Procedural History Litigation

9        Garcia also seeks an order precluding any evidence of the underlying procedural history as

10   irrelevant under Federal Rule of Evidence 401. The court disagrees.

11       First, the court finds that the present motion is overbroad. The motion does not identify

12   which part of the procedural history should be precluded as irrelevant or what part of the procedural

13   history Campbell is expected to proffer at trial. Second, certain aspects of the procedural history of

14   this case are relevant to this action because the court has already determined the issue of liability as

15   a matter of law. Therefore, the court shall deny this motion in limine without prejudice. If Garcia

16   has objections to specific portions of the procedural history being proffered at trial, such objections

17   can be made at that time.

### 4.   Jury Nullification

19       In her next motion in limine, Garcia requests an order precluding Campbell from making

20   any arguments at trial that amount to improper jury nullification. *See* ECF No. 89.

21       Although the court agrees with exclusion of such argument or suggestion, Garcia fails to

22   identify what specific arguments, if any, she is seeking to preclude. As such, the court finds that

23   any necessary rulings related to improper argument constituting jury nullification can be made

24   during the course of trial. The court shall deny this motion without prejudice.

25   ///

26   ///

1

### 5.  Workers' Compensation Benefits

2        At the time he was injured, Campbell was in the course and scope of his employment as a

3   truck driver with non-party Knight Transportation ("Knight"). After the accident, the workers'

4   compensation carrier for Knight paid for Campbell's medical treatment as well as lost income. In

5   addition, the workers' compensation carrier paid Campbell a lump-sum payment of $15,000 in lieu

6   of vocational rehabilitation. Garcia argues that, under Nevada's statutory exception to the

7   collateral-source rule, evidence of Campbell's worker compensation must be introduced to the jury.

8   *See* Nev. Rev. Stat. § 616C.215(10).

9        Nevada has "a *per se* rule barring the admission of a collateral source of payment for an

10   injury into evidence for any purpose." *Proctor v. Castelletti*, 911 P.2d 853, 854 (Nev. 1996).

11   "However, Nevada recognizes a limited exception to the collateral source rule for workers'

12   compensation payments." *Tri-Cty. Equip. & Leasing v. Klinke*, 286 P.3d 593, 595 (Nev. 2012).

13   "Pursuant to NRS 616C.215(10), '[i]n any trial of an action by the injured employee . . . against a

14   person other than the employer or a person in the same employ, the jury must receive proof of the

15   amount of all payments made or to be made by the insurer or the Administrator [of the Division of

16   Industrial Relations].'" *Id.* (alterations in original) (quoting Nev. Rev. Stat. § 616C.215(10)). "The

17   court must then instruct the jury to follow the court's damages instructions without reducing any

18   award by the amount of workers' compensation paid, thus leaving unaltered the general substantive

19   law on calculating damages." *Id.*

20        The Nevada Supreme Court has explained that "the primary purpose of [this collateral-

21   source-rule exception] is to avoid confusing the jury about the payment and nature of workers'

22   compensation benefits, and their relation to the damages awarded . . . ." *Klinke*, 286 P.3d at 596

23   (citing *Cramer v. Peavy*, 3 P.3d 665, 669 (Nev. 2000)). By avoiding jury confusion and

24   speculation, this statutory exception "benefits both the plaintiff and the defendant . . . ." *Id.* at 596.

25        Based on this statutory requirement, the court will grant Garcia's motion and allow her to

26   introduce evidence of Campbell's workers' compensation payment. The court will provide the jury

1    the statutorily-prescribed limiting instruction. *See* Nev. Rev. Stat. § 616C.215(10).

2             **6.  Future Medical Expenses**

3             Garcia also seeks to preclude Campbell from proffering any evidence at trial of future

4    medical damages. Specifically, Garcia argues that Campbell has not disclosed nor presented any

5    evidence that he will require ongoing or future medical treatment as a result of the underlying

6    accident. Given the lack of evidence on this issue, Garcia contends that Campbell should be

7    foreclosed from seeking future medical damages at trial.

8             The court has reviewed the motion and finds that it is overbroad. Garcia does not specify

9    whether she is attempting to preclude evidence about special damages, general damages, or both. If

10   Garcia is attempting to preclude evidence and argument about future general damages, the court

11   shall deny the motion, as Campbell's psychological injuries have not been resolved and are the

12   main issue going to trial. Accordingly, the court shall deny Garcia's motion without prejudice. If

13   Garcia has specific objections to evidence presented at trial, such objections can be made at that

14   time.

15            **7.  Damages for Future Wage Loss**

16            Following the underlying accident, Campbell was placed on certain physical restrictions

17   pertaining to his employment as a long-haul truck driver. As part of his workers' compensation

18   benefits, Campbell had the option of taking part in vocational-rehabilitation training. Campbell

19   refused and elected to take a $15,000 lump-sum payment instead of pursuing the vocational

20   training.

21            Garcia argues that, because Campbell collected money in lieu of vocational training,

22   Campbell cannot now attempt to collect lost wages as part of his damages. ECF No. 89. In

23   opposition, Campbell states that he is not seeking special damages related to future wage loss.

24   Rather, Campbell argues that he will only be proffering evidence of his prior lost income to express

25   to the jury how the accident has affected him. Therefore, the court shall grant Garcia's motion as to

26   this issue and preclude Campbell from seeking damages for future wage loss. However, as to the

issue of the admissibility of evidence of lost wages, the court shall reserve this issue for trial when the court is in a better position to understand the context of the evidence and its relevance to the present action. Regardless, evidence of Campbell's rejection of vocational-rehabilitation training is relevant to his pain-and-suffering claim.

### C. Campbell's Motion to Exclude References to an Intervening Event (ECF No. 90)

In his first motion in limine, Campbell seeks to exclude any evidence, argument, or reference insinuating that the subject collision was unavoidable or that there may have been an intervening event that caused the accident—like Kilburn having a heart attack—rather than Kilburn's negligence. Campbell argues that there is no evidence that indicates that the accident was unavoidable and the defense should be precluded from making such an argument at trial. The court agrees.

The issue has already been addressed by the court in a separate order. At summary judgment, Campbell filed a motion seeking a finding of liability on his claim of negligence. *See* ECF No. 59. The court granted the motion and found that "based on the undisputed evidence in this action . . . Kilburn was negligent in operating his motor vehicle." ECF No. 74 at 3-4. Further, the court found that "there is no evidence to support Garcia's position" that "Kilburn had a heart attack or some other intervening medical problem which caused him to cross into oncoming traffic." *Id*. Therefore, the court shall grant Campbell's first motion in limine. Liability is not an issue at trial.

### D. Campbell's Motion in Limine to Exclude Surveillance Report (ECF No. 91)

In his second motion in limine, Campbell seeks to exclude the October 18, 2012 surveillance report conducted by non-party Apex Investigations ("Apex") on behalf of non-party York Risk Services ("York").[3] The report details surveillance that was conducted on Campbell after the accident on September 27, 2012, and September 28, 2012. Campbell makes two primary arguments as to why the report should be excluded. First, he contends that it cannot be

---

[3] A copy of York's surveillance report is attached as Exhibit 1 to Campbell's motion in limine. *See* ECF No. 91, Exhibit 1, at 7-13.

1   authenticated because Garcia has not named G. White, the Apex field investigator who authored

2   the report, as a trial witness. Second, Campbell argues that the report is inadmissible hearsay.[4]

3         Regarding authentication, Campbell argues that, by failing to include the investigator in her

4   witness list, Garcia cannot call a witness with personal knowledge of the report's content and

5   therefore cannot satisfy the authentication requirements under FRE 901. In response, Garcia argues

6   (in a conclusory fashion) that the document is self-authenticating and, alternatively, that she can

7   call York's custodian of records to authenticate the report. The self-authentication argument is

8   without merit, as the document does not fall within the parameters of FRE 902. *See United States v.*

9   *Ray*, 930 F.2d 1368, 1370 (9th Cir. 1990), *as amended on denial of reh'g* (Apr. 23, 1991)

10  ("Business records are not normally self-proving.").

11        While Garcia does not expand on her alternative argument, she correctly alludes to the fact

12  that a business record admitted under FRE 803(6), the business-records hearsay exception, can be

13  authenticated by a custodian of records or "another qualified witness" that can testify that the

14  record meets the requirements under Rule 803(6). *See id.*; Fed. R. Evid. 803(6)(D). "[T]he

15  'custodian of records need not have personal knowledge of the actual creation of the document.'"

16  *United States v. Adefehinti*, 510 F.3d 319, 325-26 (D.C. Cir. 2007) (quoting *United States v.*

17  *Williams*, 205 F.3d 23, 34 (2d Cir. 2000)). As discussed below, Garcia is attempting to introduce

18  the report as a business record. In turn, the investigator who authored the report is not the only

19  witness who can authenticate it.

20        Nonetheless, Garcia's argument evades the fact that the court's pretrial order, which

21  includes the witnesses each party intends to call at trial, does not include any defense witnesses

22  from either York Risk Services or Apex Investigations. *See* ECF No. 82 at 8. Garcia's response

23

24       [4] Campbell also makes a third minor argument that the report is unduly prejudicial because it notes that
the investigator captured fifty-seven seconds of video during the day-and-a-half surveillance period. ECF No.

25  91-1 at 5. Campbell argues that, because the period is so short, the jury could not "get a fair representation of
the impact of Plaintiff's injuries on Plaintiff . . . ." ECF No. 91 at 5. This argument is inapposite because

26  Campbell is moving to exclude the report, not the video it references.

1   therefore does not address the fact that she would need to move this court to amend its pretrial

2   order in order to call an appropriate foundational witness at trial. Thus, without such an

3   amendment, Garcia will be unable to authenticate the surveillance report. *See Amarel v. Connell*,

4   102 F.3d 1494, 1515 (9th Cir. 1996) (describing the standard for amending a pretrial order).

5          Even if Garcia had moved to amend the pretrial order, the report would still constitute

6   hearsay (i.e., an out-of-court statement offered for the truth of the matter asserted). Fed. R. Evid.

7   801. Garcia does not dispute that she is attempting to introduce the report for the truth of the matter

8   asserted and that it thus constitutes hearsay. Instead, she argues the report satisfies the business-

9   records hearsay exception and is thus admissible. *See* Fed. R. Evid. 803(6). "Under Rule 803(6), for

10  a memorandum or record to be admissible as a business record, it must be (1) made by a regularly

11  conducted business activity, (2) kept in the regular course of that business, (3) the regular practice

12  of that business to make the memorandum, (4) and made by a person with knowledge or from

13  information transmitted by a person with knowledge." *Paddack v. Dave Christensen, Inc.*, 745 F.2d

14  1254, 1258 (9th Cir. 1984) (internal quotation marks omitted) (quoting *Clark v. City of L.A.*, 650

15  F.2d 1033, 1036-37 (9th Cir. 1981)). "Business records are admissible 'unless the source of

16  information or the method or circumstances of preparation indicate lack of trustworthiness.'" *Id*.

17  (quoting Fed. R. Evid. 803(6)).

18         Courts have long held that "a document prepared for purposes of litigation is not a business

19  record because it is lacking in trustworthiness." *Clark*, 650 F.2d at 1036-37 (citing *Palmer v.*

20  *Hoffman*, 318 U.S. 109 (1943)). "This is because where the only function that the report serves is to

21  assist in litigation or its preparation, many of the normal checks upon the accuracy of business

22  records are not operative." *Paddack*, 745 F.2d at 1258 (internal quotation marks omitted) (holding

23  that written reports of a trust-fund audit conducted after the trustees suspected misconduct were

24  prepared in anticipation of litigation, thus "preclud[ing] their admission" under the

25  business-records exception). It is also well-established that this principle applies to reports authored

26  by outside investigators. *See Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200,

205 (4th Cir. 2000); *Jordan v. Binns*, 712 F.3d 1123, 1136 (7th Cir. 2013) ("[A] nonaffiliated investigator may have pecuniary motives to skew a report in favor of the client that hired him, for a damaging report may result in the client looking elsewhere next time around.").

Although York is not a party in this action, it clearly ordered an investigation of Campbell in order to ascertain his degree of disability. Because York (and thereby its outside investigator) very likely had an incentive to find Campbell able-bodied, the report lacks "many of the normal checks upon the accuracy of business records . . . ." *Paddack*, 745 F.2d at 1258. It therefore does not satisfy the business-records exception. And because Garcia has not identified any non-hearsay purposes for the report, it is inadmissable. The court will therefore grant Campbell's motion.

**E. Campbell's Motion in Limine to Exclude Past Medical Bills (ECF No. 92)**

In his third motion in limine, Campbell seeks to exclude his past medical bills and related collateral-source evidence (i.e., evidence of his workers' compensation benefits). Campbell argues that he does not intend to claim, as an element of his damages, the amount of his past medical expenses for the care and treatment of the physical injuries sustained in the underlying crash.[5] Thus, Campbell contends that evidence related to his past medical bills and workers' compensation benefits are irrelevant to the remaining issues for trial and would lead to prejudice because of the risk that the jurors might use the amount of prior medical bills as a substitute for the amount for pain and suffering that should be awarded to Campbell in this action. In support of this argument, Campbell cites numerous state and federal cases from other jurisdictions finding that past medical expenses are inadmissible for purposes of establishing pain and suffering.

For instance, in *Payne v. Wyeth Pharmaceuticals*, the federal district court found such evidence inadmissible under FRE 401 and 403. *Payne v. Wyeth Pharm., Inc.*, No. 2:08-CV-119,

---

[5] Plaintiff represents that "he intends only to pursue damages related to future medical specials, if any, and past and future pain, suffering, disability, and/or loss of enjoyment of life he has suffered, and will continue to suffer, as a result of his injuries." ECF No. 92 at 3.

2008 WL 4890760, at *6-7 (E.D. Va. Nov. 12, 2008). In regards to relevancy, the court found that "there is no logical or experiential correlation between the monetary value of medical services required to treat a given injury and the quantum of pain and suffering endured as a result of that injury." *Id*. (quoting *Carlson v. Bubash*, 639 A.2d 458, 462 (Pa. Super. Ct. 1994)). The court cited several rationales for this conclusion. For example, "the mere dollar amount assigned to medical services masks the difference in severity between various types of injuries. A very painful injury may be untreatable, or, on the other hand, may require simpler and less costly treatment than a less painful one." *Id.* (quoting *Carlson*, 639 A.2d at 462). In regards to Rule 403, the court found that, in this context, medical bills have limited probative value, which was substantially outweighed by the risk of jury confusion and undue delay. *Id*. ("The jury may be tempted to treat the medical bills as recoverable special damages rather than to only assess the medical bills as evidence that [the plaintiff] experienced pain and suffering.").

In opposition, Garcia argues that Campbell's past medical bills are directly relevant to the pain and suffering he incurred as a result of the accident. Garcia cites a case from another court in this district to support the proposition that there is "a relationship between a plaintiff's past medical specials and the amount of general damages."[5] ECF No. 102 at 4 (citing *Murray v. State Farm Mut. Auto. Ins. Co.*, No. 2:12-CV-00936-APG, 2014 WL 980298, at *3 (D. Nev. Mar. 12, 2014)). In *Murray*, the plaintiff needed to establish that her damages exceeded $210,000 in order to claim additional benefits from the defendant, her auto-insurance provider. Because the only damages that the plaintiff could substantiate were $23,000 in past and estimated-future medical expenses, the court held that "a reasonable jury . . . could not conclude that damages for pain and suffering

---

[5] Garcia also argues that the medical bills are relevant for impeaching Dr. Michael Song, one of Campbell's expert witnesses. ECF No. 102 at 6. In his expert report, Dr. Song opined that the medical expenses that Campbell incurred after the accident were normal and customary for this community. *Id*. Garcia argues that she should be allowed to impeach Dr. Song on this point, thus requiring introduction of the medical bills. However, as addressed above, Campbell does not intend to elicit testimony from Dr. Song concerning the reasonableness of his prior medical bills and will be precluded from doing so. This issue is therefore moot.

1    exceed $186,928." *Murray*, 2014 WL 980298, at *3. It further held that, based "[o]n the scant

2    evidence filed by Murray, jumping from $23,072 to $210,000 is a bridge too far." *Id*.

3         The court finds the analysis in Campbell's cited authorities—particularly *Payne v. Wyeth*

4    *Pharmaceuticals*—persuasive. Because he is not seeking special damages for past medical

5    expenses, there is no relevance between these costs and Campbell's purported pain and suffering.

6    While the type of medical treatment that he received after the accident is relevant, Campbell's

7    motion and Garcia's response only address Campbell's "medical bills." Additionally, *Murray* is not

8    directly on point for this issue because that court was primarily focused on whether the plaintiff

9    could prove her damages. See *Murray*, 2014 WL 980298, at *2 ("The crux of this dispute is

10   whether Murray can prove such damages."). It appears that the $23,000 in past and estimated-future

11   medical expenses was the only evidence that she presented. In contrast, Campbell intends to prove

12   his general damages through "his own testimony, the testimony of lay witnesses, and the testimony

13   of various medical experts." ECF No. 92 at 3.

14        In turn, the court will grant Campbell's motion in-part in regards to his medical bills.

15   However, as analyzed above, evidence of his workers' compensation payment is admissible under

16   Nevada's collateral-source-rule exception. *See supra* § III(B)(5). The court will therefore deny this

17   portion of his motion.

18        **F.  Campbell's Motion in Limine to Limit Expert Testimony (ECF No. 93)**

19        In his fourth motion in limine, Campbell seeks to exclude the testimony of defense expert

20   Dr. Jay Betz ("Dr. Betz"). Dr. Betz offers opinions, in both his report and deposition testimony,

21   regarding Campbell's back, neck, right knee, and psychological injuries. Campbell argues that Dr.

22   Betz does not have sufficient specialized knowledge to assist the trier of fact as it relates to the

23   issue of psychological damages.

24        The admission or exclusion of expert testimony is within the broad discretion of the trial

25   court. *Kumho Tire Co. v. Carmichael*, 526 U.S. 123, 152 (1999). Federal Rule of Evidence 702

26   governs the admissibility of expert testimony. Under Rule 702, an expert witness can testify about

1   his or her opinion on a matter if "(a) the expert's . . .  specialized knowledge will help the trier of

2   fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on

3   sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and

4   (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid.

5   702. As gatekeeper, a district court must ensure "that an expert's testimony both rests on a reliable

6   foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579,

7   597 (1993). In determining whether an expert's testimony is admissible, a district court must

8   determine whether the witness is qualified to offer the opinions he is espousing and whether the

9   testimony "rests on a reliable foundation and is relevant to the facts of the case." *Kumho Tire*, 526

10  U.S. at 152; *see also United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000).

11          Although a medical doctor need not be a licensed specialist in the particular area to which

12  he intends to testify, he must be sufficiently familiar with the field so as to be able to offer

13  meaningful and reliable opinions. *Sprague v. Bowen*, 812 F.2d 1226, 1231-32 (9th Cir. 1987).

14  Here, Dr. Betz is an occupational medical doctor who has practiced in this capacity for twenty-five

15  years. Dr. Betz, as evidenced by his curriculum vitae, has specialized certifications in quality

16  assurance and utilization review and is a certified medical evaluator. As part of his practice, Dr.

17  Betz performs fitness reviews of commercial-truck drivers for the Department of Transportation

18  and he has performed an extensive review of all the medical records in this action. The court finds

19  that Dr. Betz is sufficiently qualified to testify as an expert in this action and that his testimony will

20  help the trier of fact. Therefore, the court shall deny Campbell's motion in limine on this issue.

21          **G.  Campbell's Motion to Allow Reference to Community Conscience (ECF No. 94)**

22          In his fifth motion in limine, Campbell requests the court allow counsel to: (1) refer to the

23  jury as acting as the "conscience of the community"; (2) ask members of the jury to use their

24  common knowledge and life experiences in determining whether Kilburn's conduct was

25  unreasonable; and (3) ask the jury, based on the evidence presented in the case, to send a message

26  to the defendant that Kilburn's conduct was unreasonable.

14

Garcia opposes Campbell's motion on the basis that these types of arguments generally

constitute improper jury nullification because they encourage jurors to depart from neutrality and to

decide the case on the basis of personal interest and bias rather than on the evidence. The court

agrees. Additionally, because the court has already found Kilburn's Estate liable for the accident,

the reasonableness of his conduct is not before the jury. Accordingly, the court shall deny

Campbell's fifth motion in limine.

### H.  Campbell's Motion Regarding the Filing of Motions in Limine (ECF No. 95)

In his sixth motion in limine, Campbell seeks to preclude evidence of or argument regarding

the filing of motions in limine. Garcia does not oppose this motion. *See* ECF No. 105. Therefore,

the court shall grant this motion in limine and preclude either party from referencing the filing of

the motions in limine or the contents thereof.

### I.  Campbell's Motion Regarding Hypothetical Questions (ECF No. 96)

In his seventh motion in limine, Campbell seeks to exclude Garcia's counsel from asking

any hypothetical questions about non-existent medical conditions, as such questions are improperly

speculative and irrelevant to the present action.

Campbell's seventh motion in limine is premature. At this time, the court and the parties do

not yet know what questions will be asked of the witnesses at trial, the form of the questions, or the

manner in which any question will be asked. As such, the court shall deny the present motion

without prejudice. If Campbell has objections to any specific question asked at trial, such

objections can be made at that time.

### J.  Campbell's Motion in Limine to Exclude Prior Accidents (ECF No. 97)

In his eighth motion in limine, Campbell seeks to exclude any evidence or reference to any

of his prior accidents and associated injuries, other than the September 11, 2011 accident at issue in

this trial, as irrelevant to any issue in this case. Campbell contends that, because none of his prior

accidents involved either lumbar-spine injuries or psychological damage, which are the basis for his

damages claims in this action, these prior accidents are irrelevant and should be excluded.

1    In opposition, Garcia argues that these prior accidents are relevant evidence to Campbell's

2    claim for psychological damages. The court agrees. Campbell has been involved in four separate

3    accidents prior to the underlying vehicle accident. His involvement in these accidents is relevant to

4    the cause of his alleged PTSD and driving phobia. Therefore, the court shall deny Campbell's

5    eighth motion in limine.

6    **K. Campbell's Motion in Limine to Permit Reference to Insurance (ECF No. 98)**

7    In his final motion in limine, Campbell contends that he should be allowed to present

8    evidence that Kilburn was insured at the time of the accident. The court has already addressed this

9    argument when discussing defendant Garcia's motions in limine nos. 2-8. *See supra* § III(B)(1). As

10   addressed previously, there is no basis to admit evidence that Kilburn was insured at the time of the

11   accident. Therefore, the court shall deny this motion.

12

13   IT IS THEREFORE ORDERED that defendant's motion in limine no. 1 (ECF No. 88) is

14   GRANTED.

15   IT IS FURTHER ORDERED that defendant's motions in limine nos. 2-8 (ECF No. 89) are

16   GRANTED in-part and DENIED in-part in accordance with this order.

17   IT IS FURTHER ORDERED that plaintiff's motion in limine to exclude references to an

18   intervening event (ECF No. 90); motion in limine to exclude surveillance report (ECF No. 91); and

19   motion in limine regarding the filing of motions in limine (ECF No. 95) are GRANTED.

20   IT IS FURTHER ORDERED that plaintiff's motion in limine to exclude past medical bills

21   (ECF No. 92) is GRANTED in-part and DENIED in-part in accordance with this order.

22   ///

23   ///

24   ///

25   ///

26   ///

1    IT IS FURTHER ORDERED that plaintiff's motion in limine to limit expert testimony

2  (ECF No. 93); motion in limine to allow reference to community conscience (ECF No. 94); motion

3  in limine regarding hypothetical questions (ECF No. 96); motion in limine to exclude prior

4  accidents (ECF No. 97); and motion in limine to permit reference to insurance (ECF No. 98) are

5  DENIED.

6    IT IS SO ORDERED.

7    DATED this 13th day of September, 2016.

8    _____

9    LARRY R. HICKS
     UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26